**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

United States District Court
Eastern District of New York                    1:19-cv-04861

| | |
|---|---|
| Jami Weber-Lugo, Jane Doe, individually and on behalf of all others similarly situated | |
| Plaintiffs | Complaint |
| - against - | |
| Aldi Inc. | |
| Defendant | |

Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.     Aldi Inc. ("defendant") manufactures, distributes, markets, labels and sells ice cream and novelties labeled as types of, or containing vanilla ice cream under its Sundae Shoppe and Belmont Ice Cream (including Premium and Light varieties) brands ("Products").[1]

2.     The Products are available to consumers nationwide from one or more of the following: Aldi grocery stores, third-party retailers, including brick and mortar and online stores, directly from defendant's website in sizes including but not limited to:

| Form | Included |
|:---:|:---:|
| .5 QT/.47 L (pint) | ☐ |
| 1.0 QT/.94 L (quart) | ☒ |
| 1.5 QT/1.42 L | ☒ |

---

[1] "Novelties" refers to products other than ice cream sold by the carton, such as ice cream sandwiches, cones, etc.

|                          |             |
|--------------------------|-------------|
| 4.0 QT/3.78 L (gallon)   | ☒           |
| Ice Cream Sandwiches     | ☐           |
| Ice Cream Cones          | ☐           |

3.     The following table contains products represented as, or containing, forms of vanilla ice cream in the Product Lines.

| Belmont | Sundae Shoppe |
|---------|---------------|
| Vanilla Light Ice Cream | Vanilla Light Ice Cream |

4.     This list is non-exhaustive as both of these Product Lines may contain ice cream combinations in which vanilla ice cream is featured and understood as a component of these varieties, such as Cookies and Cream, Caramel and other varieties.

5.     The Products are represented as vanilla light ice cream on the labels, in point-of-sale marketing, retailers' display ads and promotions, websites, television and/or radio ads.[2]

6.     The representations of the Products are misleading because they contain some or all of the following misrepresentations: deriving the entirety of their flavor from vanilla and overstating the amount and/or the percentage of vanilla, individually, and compared to the overall flavor component.

I.   Vanilla is Perennial Favorite Flavor for Ice Cream

7.     Ice cream is a year-round treat enjoyed by 96% of Americans.[3]

8.     Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[4]

---

[2] 21 C.F.R. § 135.110(f)(6) (applying identical labeling for vanilla ice cream when combined with other flavors, i.e., Neapolitan).
[3] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018
[4] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com.

9.     Of all the flavors, vanilla is the consistent number one for 28% of consumers, confirmed the two groups who supply ice cream – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

10.    When Thomas Jefferson wrote this country's first recipe for vanilla ice cream during the War for Independence, he entrusted the Free Masons to conceal it within clues and puzzles, lest it fall into British hands.[5]

11.    The reasons for vanilla's staying power is "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats."[6]

12.    The applications of vanilla ice cream include as the centerpiece of an ice cream sandwich (vanilla ice cream between chocolate wafers), topping a warm slice of oven-fresh apple pie, in a hot fudge Sunday or dunked in a cold frothy glass of root beer (float).[7]

13.    By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[8]

II.  Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

14.    In 1908, E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[9]

---

[5] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress.

[6] Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018

[7] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.

[8] Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018

[9] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

15.    The global landscape since The Pure Food and Drugs Act, enacted in 1906 to "protect consumer health and prevent commercial fraud," has changed little.[10]

16.    Daily headlines alert us to this resurgent international threat of "food fraud"– whether olive oil made from cottonseeds to the horsemeat scandal in the European Union.[11]

17.    In terms of quality, vanilla is considered  a "high-risk product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings etc."[12]

18.    Due to its versatility, demand and high value – second most expensive flavoring ingredient (after saffron) – there have been continual attempts to dilute, imitate, adulterate and "extend" vanilla.[13]

19.    Though "food fraud" has no agreed-upon definition and the typologies and categories often overlap, it encompasses a broad and ever-expanding range of techniques where the end result is consumers getting less than what they bargained for.

20.    For vanilla, the following general typologies of food fraud are illustrated in the left column while examples of these practices as applied to vanilla are in the right column.[14]

| <u>Type</u> | <u>Example</u> |
| --- | --- |
| ➢ Cheating on analytical tests by containing markers | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon |

---

[10] Berenstein, 412.

[11] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

[12] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.

[13] "Extend" in the context of flavoring is a modern and polite way to say "dilute" or "adulterate" – to make what is being "extended" go farther.  Since "dilute" and "adulterate" have a deserved negative connotation, the flavor industry and technical trade literature use the euphemistic term, "extend."

[14] https://www.ifsqn.com/fsf/Understanding%20Food%20Fraud.pdf

| | |
|---|---|
| specifically tested for | isotope composition to natural vanilla |
| ➢ Cheating by giving consumers the impression the food or ingredient is present in greater amounts and/or higher quality form than it actually contains | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks they are a result of the product containing real vanilla bean, when the ground beans have been exhausted of flavor, and any vanilla flavor tasted may not even be due to the presence of real vanilla |
| ➢ Substitution or Replacement a food product/ingredient with an alternate food product/ingredient of lower quality | • Tonka beans, which are banned from entry to the United States, instead of vanilla beans;<br>• Coumarin, phytochemical found in Tonka beans, to increase the vanilla flavor perception. |
| ➢ Coloring agents to produce a more attractive color | • Caramel in vanilla extracts to darken the substance's color additives like caramel to enhance the hue of an imitation vanilla so it more closely resembles real vanilla;[15]<br>• Annatto and turmeric in vanilla ice cream to darken the color to better resemble the hue of rich, yellow butter. |
| ➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, derived from wood pulp, tree bark or coal tar. |
| ➢ Ingredient list deception[16] | • Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list – |

---

[15] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.

[16] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar

|  | <mark>"ground vanilla beans" as containing actual vanilla flavor when they are devoid of any naturally occurring vanilla flavor.</mark> |
|---|---|
| ➢ Diluting/Extending | • Combination with a variety of flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla."[17] |
|  | • <mark>"Spiking" of vanilla through addition of natural flavors which simulate the taste of vanilla, contrary to consumer expectations and law.</mark> |

21. As shown below, the "food fraud" typologies evident in the Products include one or more of the above-described types.

III. What Consumers Expect from Vanilla Ice Cream

22. To protect consumers from being deceived by vanilla ice cream products that purport to contain vanilla but do not or contain less vanilla, standards were developed to require conspicuous, accurate and non-misleading labeling that conforms with consumer expectations.[18]

23. By law, vanilla refers to "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[19]

24. Vanilla extract and flavor differ only in that the former is at least thirty-five (35) percent ethyl alcohol while the latter is less than this amount.[20]

---

[17] Berenstein, 423.
[18] 21 C.F.R. § 169.175-182.
[19] 21 C.F.R. §169.3(c)
[20] 21 C.F.R. §§ 169.175 (Vanilla extract.), 169.177 (Vanilla flavoring.).

25.    For almost half a century, consumers have expected vanilla ice cream to contain real vanilla derived from vanilla beans as the exclusive source of the flavor – designated as vanilla flavor or vanilla extract on the ingredient list ("Category 1").[21]

26.    Where an ice cream product contains a natural characterizing flavor (i.e., vanilla) and an artificial flavor simulating it, and if the natural flavor predominates, the product is correctly labeled with the name common name of the characterizing flavor followed by "ice cream," i.e., vanilla flavored ice cream.

27.    Where an ice cream product contains a natural characterizing flavor and an artificial flavor simulating it, the artificial flavor predominates, or if only artificial flavor is used, the product is correctly and non-misleadingly named "artificially flavored" preceding the characterizing flavor and "ice cream."

28.    Any flavors which does not derive from the characterizing flavor is considered an artificial flavor when it comes to ice cream.

29.    This distinction is established by law and owes in part to ice cream being a high quality, natural and simple food, and due to the effect the freezing and mixing may have with respect to the incorporation of the flavorings.

30.    Natural flavor compounds that simulate vanilla but are not derived from the characterizing flavor (i.e., vanilla) may be used in ice cream but the product must be labeled as "-flavored" instead of "characterizing flavor ice cream," as long as the flavor from the characterizing flavor predominates.

31.    The purpose of this requirement is to consumers are not misled by companies giving them less than expected amounts of the actual characterizing flavor ingredients, yet not disclosing

---

[21] 21 C.F.R. § 135.110(f)(2)(i); 21 C.F.R. § 169.175-182.

this on the front label in a conspicuous manner.

32.     The table below attempts to summarize the requirements of law which protect consumers from being deceived.

| Contains Non-Vanilla Flavors? | Does Flavor from Characterizing Flavor Predominate? | Front Label | Category |
|---|---|---|---|
| No | N/A (only vanilla) | Vanilla Ice Cream | I[22] |
| Yes | Yes | Vanilla Flavored Ice Cream | II[23] |
| Yes | No | Artificially Flavored Vanilla Ice Cream | III[24] |

IV. What Consumers Expect from Light Ice Cream Products

33.     Until the 1990s, any product with "ice cream" in its name had to meet requirements set in the standards of identity.

34.     These standards required a product labeled ice cream to be a dairy product, with a minimum percent of milkfat ingredients, (2) performance characteristics including texture, melting point, freezing point, (3) flavor as prescribed by the standard and (4) functional properties like body, spreadability, and shelf life.[25]

35.     However, acting at the direction of Congress, the FDA enabled regulations allowing for modified versions of standardized foods, by permitting an express nutrient content claim to precede a standardized food's name, essentially creating new standards of identity.[26]

36.     An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, such as calories or fat.[27]

---

[22] 21 C.F.R. § 135.110(f)(2)(i)
[23] 21 C.F.R. § 135.110(f)(2)(ii)
[24] 21 C.F.R. § 135.110(f)(2)(iii)
[25] 21 C.F.R. § 135.110
[26] 21 C.F.R. § 130.10
[27] 21 C.F.R. § 101.13

37. The expressed nutrient content claims related to the characterizing ingredient of milk fat, and the following versions of ice cream were introduced to the market:

| Modified Ice Cream | Difference between Modified and Standardized Version |
|---|---|
| Reduced Fat Ice Cream | 25% less fat than a reference product[28] |
| Light Ice Cream | 50% reduction in total fat from the reference product, or one-third reduction in calories if fewer than 50% of the calories are from fat[29] |
| Low Fat Ice Cream | Not more than 3 g of total fat per serving[30] |
| Nonfat or Fat Free Ice Cream | Less than 0.5 g of fat per serving[31] |

38. Adjustments to the composition and structure of the standardized food were permitted, in the minimum amount necessary to qualify for the nutrient content claim.

39. In all other respects, the product had to maintain conformity to the standard so consumers would not purchase a product that departed in significant and/or material ways from what they expect and are accustomed to receiving.

40. Where an ice cream products derives its flavor solely from the characterizing ingredient, the name of the food on the principal display panel – "ice cream" – is accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla."[32]

41. This means that in a product named in the format "[characterizing flavor] + [ice cream]," the standard required only flavor obtained from the characterizing flavor be used.

V. Vanilla Light Ice Cream Products are Misleading – Not only vanilla flavor

42. The Products are represented as "vanilla light ice cream" and expected by consumers

---

[28] 21 C.F.R. § 101.62(b)(4)
[29] 21 C.F.R. § 101.56
[30] 21 C.F.R. § 101.62(b)(2)
[31] 21 C.F.R. § 101.62(b)(1)
[32] 21 C.F.R. § 135.110(f)(2)(i)

to only contain flavor derived from the characterizing flavor, vanilla.[33]

43.     The consumer gets the impression that vanilla is the sole flavor source due to the front label representations including (1) the name, "Vanilla Light Ice Cream," (2) absence of the term "flavored" or "artificially flavored," or variations thereof, indicating a product that contains only flavor from the characterizing flavor – vanilla, (3) "No Artificial Flavors" and (4) vanilla flower vignette.

<u>Sundae Shoppe</u>                                 <u>Belmont</u>

  

44.     The images below provide a closer look of the flavor designation on the Products.

<u>Sundae Shoppe</u>   

Belmont 

## A.  Ingredient List Reveals Flavoring Not Exclusively from Vanilla

45.     The presence of flavor not derived from vanilla is inconsistent with vanilla ice cream as expected by consumers and required by law.

46.     The representations that the vanilla flavor is exclusively derived from vanilla plant is misleading because the ingredient lists reveals the Product contains "Natural Flavors."

47.     The Sundae Shoppe product Nutrition Facts and Ingredient List is presented below.

Sundae Shoppe



**INGREDIENTS**: MILKFAT AND NONFAT MILK, SUGAR, BUTTERMILK, CORN SYRUP, WHEY, CONTAINS 1% OR LESS OF: NATURAL FLAVOR, PROPYLENE GLYCOL MONOESTER, MONO AND DIGLYCERIDES, GUAR GUM, CELLULOSE GUM, POLYSORBATE 80, CARRAGEENAN, ANNATTO (COLOR), VITAMIN A PALMITATE.

48.     The Belmont product Nutrition Facts and Ingredient List is presented below.

Belmont



**INGREDIENTS**: MILKFAT AND NONFAT MILK, SUGAR, BUTTERMILK, CORN SYRUP, WHEY, CONTAINS 1% OR LESS OF: NATURAL FLAVOR, PROPYLENE GLYCOL MONOESTER, MONO AND DIGLYCERIDES, GUAR GUM, CELLULOSE GUM, POLYSORBATE 80, CARRAGEENAN, ANNATTO (COLOR), VITAMIN A PALMITATE.

B.  Modified Versions of Standardized Ice Cream Products are Required to Contain Flavor Only Derived from Vanilla

49.    [Vanilla] ice cream, a standardized food, is required and expected to contain flavor derived exclusively from the characterizing flavor [vanilla], and the standard does not permit the replacement or substitution of flavor not obtained from that source [vanilla beans].  *See* 21 C.F.R. § 130.10(d)(2).[34]

50.    The Products contain "Natural Flavors" as an ingredient or component of the flavoring ingredient, which is specifically prohibited in such products.  *See* 21 C.F.R. §

---

[34] 21 C.F.R. § 130.10(d)(2) ("An ingredient or component of an ingredient that is specifically required by the standard (i.e., a mandatory ingredient) as defined in parts 131 through 169 of this chapter, shall not be replaced or exchanged with a similar ingredient from another source unless the standard, as defined in parts 131 through 169 of this chapter, provides for the addition of such ingredient (e.g., vegetable oil shall not replace milkfat in light sour cream); 21 C.F.R. § 135.110(f)(2)(i)

130.10(d)(3).[35]

51.    The Products are required to contain vanilla flavor or vanilla extract in a significant amount because the quantity of vanilla flavoring contained, if any, is not able to achieve the technical effect that vanilla typically provides in an ice cream product which has vanilla as the exclusive flavoring source.[36]

52.    "Natural Flavors" is not provided for by the standard for the Products and/or is used in the Products in excess of what the law allows and would be expected by consumers from such products.

53.    However, the ingredient list does not identify the "Natural Flavors" with an asterisk, such as "*Ingredient(s) not in regular vanilla light ice cream" or "*Ingredient(s) in excess of amount permitted in regular vanilla light ice cream."[37]

### C.    Natural Flavor is not a Synonym for Vanilla Flavor or Vanilla Extract in the Products

54.    As opposed to the general flavoring regulations, a natural flavor in the context of ice cream means a flavor that was derived from the product whose flavor is simulated – i.e., vanilla ice cream is only permitted to contain flavor derived from vanilla beans.

55.    The flavoring is not exclusively from vanilla because if it were, it would not be

---

[35] 21 C.F.R. § 130.10(d)(3) ("An ingredient or component of an ingredient that is specifically prohibited by the standard as defined in parts 131 through 169 of this chapter, shall not be added to a substitute food under this section."); 21 C.F.R. § 135.110(f)(2)(i)

[36] 21 C.F.R. § 130.10(d)(4) ("An ingredient that is specifically required by the standard as defined in parts 131 through 169 of this chapter, shall be present in the product in a significant amount. A significant amount of an ingredient or component of an ingredient is at least that amount that is required to achieve the technical effect of that ingredient in the food."); 21 C.F.R. § 135.110(f)(2)(i)

[37]   21 C.F.R. § 130.10(f)(2) ("Ingredients not provided for, and ingredients used in excess of those levels provided for, by the standard as defined in parts 131 through 169 of this chapter, shall be identified as such with an asterisk in the ingredient statement, except that ingredients added to restore nutrients to the product as required in paragraph (b) of this section shall not be identified with an asterisk. The statement "*Ingredient(s) not in regular ___" (fill in name of the traditional standardized food) or "*Ingredient(s) in excess of amount permitted in regular ___" (fill in name of the traditional standardized food) or both as appropriate shall immediately follow the ingredient statement in the same type size.); 21 C.F.R. § 135.110(f)(2)(i).

necessary to list "Natural Flavors."

56.    Defendant's listing of "natural flavor" in addition to vanilla (in the extract or flavor form) is a tacit acknowledgement that the "natural flavor" is not a synonym for the required vanilla ingredients. *Compare* 21 C.F.R. § 101.22 (natural flavor) *with* 21 C.F.R. § 169.175 (Vanilla extract.) and § 169.177 (Vanilla flavoring.).

57.    Additionally, it would be illogical to use a more expensive and higher quality ingredient (vanilla extract or vanilla flavor) but designate it with a general term perceived by consumers to cost less money and appearing on most foods ("natural flavor").

D.    Natural Flavor does not refer to the Standardized Vanilla-Vanillin Ingredients

58.    The vanilla standards reference three vanilla-vanillin combinations – Vanilla-vanillin extract, Vanilla-vanillin flavoring and Vanilla-vanillin powder.[38]

59.    The standardized vanilla ingredients – vanilla extract, vanilla flavoring, concentrated vanilla flavoring, and vanilla powder – could be understood as complying with the requirements for "natural flavor."[39]

60.    However, the "vanillin" referred to in the standardized combination ingredients is produced from non-vanilla bean materials, like wood pulp, coal tar or plant fiber.

61.    While vanillin is a main flavoring component of vanilla, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant.

62.    This type of "natural vanillin" is rarely produced, which means that almost all vanillin is synthetically produced and has no connection to the vanilla bean.

---

[38] 21 C.F.R. § 169.180, § 169.181, § 169.182.
[39] 21 C.F.R. § 169.175 (Vanilla extract.), § 169.176 (Concentrated vanilla extract.), § 169.177 (Vanilla flavoring.), § 169.178 (Concentrated vanilla flavoring.) and § 169.179 (Vanilla powder.).

63.   For the purposes of ice cream flavor labeling, vanillin (from non-vanilla sources) cannot be designated as a "natural flavor" because it implies it derives from vanilla beans, whose flavor it simulates.[40]

64.   This applies even when vanillin is produced through a natural process (fermentation), such that it is properly designated as "vanillin derived naturally through fermentation."

65.   This means if a vanilla flavor is derived from any source other than vanilla, it is accurately designated as an artificial flavor.[41]

66.   Therefore, the standardized vanilla-vanillin combination ingredients are not the ingredients used in the Products but for some reason, designated as "natural flavor."

E.   "Natural Flavors" Refers to Vanilla with Other Natural Flavors ("Vanilla WONF")

67.   While "natural flavor" is a permitted name for the purposes of the ingredient list, it does not describe the flavoring defendant purchases from a supplier.

68.   It is likely, based on industry customs and trade practice, that defendant purchased an ingredient from a flavor supplier identified as "Vanilla (extract or flavor) With Other Natural Flavors" ("Vanilla WONF").

69.   In vanilla ice cream, it is misleading to label ingredients which simulate, reinforce and extend vanilla as a "natural flavor" or "Vanilla extract/flavor with other natural flavor" because it misleadingly implies that the flavor is derived from vanilla beans, whose flavor it simulates.[42]

70.   In the context of vanilla ice cream, WONF flavors would be designated where there is a characterizing flavor from the product [vanilla flavor *from* vanilla] whose flavor is simulated

---

[40] 21 C.F.R. § 101.22(a)(3)
[41] In contrast to the regulations at 21 C.F.R. § 101.22.
[42] 21 C.F.R. § 101.22(a)(3)

and other natural flavor [synthetic or artificial vanillin, compounds obtained from natural sources as understood by the general flavoring regulations] which simulates, extends, resembles or reinforces the characterizing flavor.

71.    No standardized vanilla ingredients provide for "other natural flavors" to be added with a vanilla flavoring or extract because this would result in the spiking of the vanilla flavor.

72.    This practice is deceptive because it will cause consumers to believe more vanilla is present than actually the case, they will pay more for such product and expect that all of the vanilla flavor is derived from vanilla beans.

F.    Coloring Reinforces the Deception that the Products are Vanilla Ice Cream

73.    The Products contain "Annatto (Color)," often used in cheddar cheese to provide a rich yellow-orange shade evocative of milkfat associated with butter, produced by dairy cattle in the United States.

74.    No allegation is made with respect to how annatto is declared or about its use, which is specifically permitted by regulation.[43]

75.    The added color modifies the color of the ice cream to a color closer to vanilla ice cream flavored exclusively by vanilla bean components – a darker shade like in the following stock image, which is similar in appearance to color of the front labels and visible parts of the products prior to purchase.

---

[43] 21 C.F.R. § 101.22(k)(3)



76.    The darker color makes the consumer (1) less likely to question or probe into the amount and type of vanilla in the Products and (2) expect the Products to be similar to other, accurately labeled vanilla (light) ice cream products.

## VI. Products are Misleading Because Labeled and Named Similarly to Other Distinct Products

77.    Though the Products are light ice cream, the requirement with respect to containing flavor only from the characterizing flavor applies the same way as to regular ice cream.

78.    Competitor brands adjacent to defendant's are labeled as vanilla ice cream which contain the amount and/or type of vanilla required by law and expected by consumers.

79.    The Products are misleading because they are marketed as vanilla ice cream adjacent to other vanilla ice cream products which contain vanilla flavoring exclusively from vanilla beans.

<u>Competitor Product</u>                                   <u>Product</u>







**INGREDIENTS:** CREAM, SKIM MILK, CANE SUGAR, EGG YOLKS, ==VANILLA EXTRACT==.

**INGREDIENTS**: MILKFAT AND NONFAT MILK, SUGAR, BUTTERMILK, CORN SYRUP, WHEY, CONTAINS 1% OR LESS OF: ==NATURAL FLAVOR==, PROPYLENE GLYCOL MONOESTER, MONO AND DIGLYCERIDES, GUAR GUM, CELLULOSE GUM, POLYSORBATE 80, CARRAGEENAN, ANNATTO (COLOR), VITAMIN A PALMITATE.

80.   Where two similarly labeled products are situated in the same category or section of a store and their representations as to quality and/or fill are identical, yet the former (Product) is lacking the quantity of the characterizing ingredient (vanilla) or qualities (of the Competitor Product), the reasonable consumer will be deceived.

81.   Accordingly, the reasonable consumer will and does pay more money for the former product under the false impression that it contains the equivalent amount and/or type of the characterizing ingredients and possesses such qualities.

18

VII. Conclusion

82.    The proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

83.    Had Plaintiff and Class members known the truth about the Products, they would not have bought the Product or would have paid less for it.

84.    The Products contain other representations which are misleading and deceptive.

85.    As a result of the false and misleading labeling, the Products are sold at premium prices, approximately no less than $5.49, per 1.5 quart (1.42L) (across the Product Lines), excluding tax – compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

86.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

87.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

88.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

89.    Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

90.    A substantial part of events and omissions giving rise to the claims occurred in this District.

<u>Parties</u>

91.    Named Plaintiff is a citizen of Richmond County, New York.

92.    Jane Doe plaintiffs are citizens of the 49 states for which the identity of a named

plaintiff has not been disclosed, but who were affected in the same manner as the Named Plaintiffs.

93.    The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

94.    Defendant is an Illinois corporation with a principal place of business in Batavia, Illinois (Kane County).

95.    During the class period, Named and Jane Doe Plaintiffs purchased one or more of the Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

96.    Named and Jane Doe Plaintiffs purchased the Products based upon the representations on the packaging.

97.    Named and Jane Doe Plaintiffs would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

98.    The classes will consist of all consumers in all 50 states with sub-classes for the individual states.

99.    The present complaint contains Named Plaintiffs from: New York, who will represent his/her/their state sub-classes of persons who purchased any Products containing the actionable representations during the statutes of limitation.

100.    Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if Named and Jane Doe Plaintiffs and class members are entitled to damages.

101.    Named and Jane Doe Plaintiffs' claims and the basis for relief are typical to other members because all were subjected to the same representations.

102.   Named Plaintiffs are adequate representatives because their interests do not conflict with other members.

103.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

104.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

105.   Named and Jane Doe Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

106.   Named and Jane Doe Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350, California Consumers<br>Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA")<br>and Consumer Protection Statutes of Other States and Territories</u>

107.   Named and Jane Doe Plaintiffs assert causes of action under the consumer protection statutes of the all 50 states, with Named Plaintiff asserting the consumer protection laws of his or her individual state.

a.  Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;
b.  Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;
c.  Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521 *et. seq.*;
d.  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;
e.  California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;
f.  Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;
g.  Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;
h.  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;
i.  District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;
j.  Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;
k.  Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;
l.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;
m.  Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;
n.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

o.  Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1 *et. seq.*;
p.  Iowa Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 *et seq.*;
q.  Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;
r.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;
s.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;
t.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;
u.  Maryland Consumer Protection Act, Md. Code, Com. Law § 13-101 *et. seq.*;
v.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws Ch. 93A;
w.  Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;
x.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et. seq.*;
y.  Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;
z.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;
aa.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;
bb.  Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;
cc.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;
dd.  New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;
ee.  New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;
ff.  New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;
gg.  New York General Business Law ("GBL") §§ 349 & 350;
hh.  North Carolina General Statutes Chapter 75: Monopolies, Trusts and Consumer Protection, N.C. Gen. Stat. §§ 75-1.1 through 75-35;
ii.  North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;
jj.  Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;
kk.  Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;
ll.  Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);
mm.  Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 *et. seq.*;
nn.  Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;
oo.  South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;
pp.  South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;
qq.  Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;
rr.  Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41 *et. seq.*;
ss.  Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1 *et. seq.*;
tt.  Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;
uu.  Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 *et. seq.*;
vv.  Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

ww. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

xx. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*; and

yy. Wyoming Consumer Protection Act, Wyo. Stat. Ann.§§ 40-12-101 *et. seq.*;

108.   Named and Jane Doe Plaintiffs and class members assert causes of action under the consumer protection laws of their States.

109.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because (1) it gives the impression to consumers the Products contain more of the characterizing ingredients than they actually do and (2) the ingredient list does not dispel ambiguity but reinforces the front-label impression as to a greater amount of the characterizing ingredients.

110.   Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

111.   Named and Jane Doe Plaintiffs and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

112.   After mailing appropriate notice and demand, Named and/or Jane Doe Plaintiffs who reside in a State where notice is required prior to seeking damages under that State's Consumer Protection Statutes, will have mailed and/or have amended this complaint to request damages. Cal. Civil Code § 1782(a), (d); Mass. UDAP, Mass. Gen Laws Ch. 93A, etc.

113.   The representations and omissions were relied on by Named and Jane Doe Plaintiffs and class members, who paid more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

114.   Named and Jane Doe Plaintiffs and class members incorporate by reference all preceding paragraphs.

115. Defendant   misrepresented   the   misrepresented   the   substantive,   quality,

23

compositional, organoleptic and/or nutritional attributes of the Products through representing the characterizing ingredient was present in greater amount than it actually was.

116.  Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

117.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge in the production, service and/or sale of the product type.

118.  The representations took advantage of cognitive shortcuts made by consumers at the point-of-sale and their trust placed in defendant, a well-known and widely recognized and respected brand in this sector for this type of product.

119.  Named and Jane Doe Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

120.  Named and Jane Doe Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <i>et seq</i>.</u>

121.  Named and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

122.  Defendant manufactures and sells products which contain a characterizing ingredient or flavor which is desired by consumers.

123.  The Products warranted to Named and Jane Doe Plaintiffs and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

124.  Defendant's front labels informed Named and Jane Doe Plaintiffs the Products contained flavoring exclusively from vanilla beans, when this was not accurate.

125. Defendant had a duty to disclose and/or provide a non-deceptive description of the Products' ingredients and knew or should have known same were false or misleading.

126. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector

127. The Products warranted to Named and Jane Doe Plaintiffs and class members that the characterizing ingredients, emphasized by the Products' name, description, label and/or website and marketing, was (1) present in an amount sufficient to characterize the Products and (2) the exclusive source of flavor in the Products.

128. Named and Jane Doe Plaintiffs desired to purchase products which were as described by defendant.

129. The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions and were not merchantable.

130. To the extent notice may be required, Named and Jane Doe Plaintiffs have or intend to send notice to defendant and reserve all rights to amendment of this complaint.

131. Named and Jane Doe Plaintiffs and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

132. Named and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

133. Defendant's purpose was to sell a product which contained a valuable and desired characterizing ingredient or flavor, and represent the Products were exclusively or predominantly flavored from that food, and contained sufficient independent amounts of same such that they would accurately be described by the product name, representations and marketing.

134. The Products were not flavored exclusively from the characterizing ingredient.

135.  Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on their front labels when it was in a position to disclose this but did not accurately describe the nature of the Products.

136.  Defendant's intent was to secure economic advantage in the marketplace against competitors by appealing to consumers who value products with this characterizing ingredient for the above-described reasons.

137.  Named and Jane Doe Plaintiffs and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

138.  Named and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

139.  Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Named and Jane Doe Plaintiffs demand a jury trial on all issues.

  **WHEREFORE,** Named and Jane Doe Plaintiffs pray for judgment:

1.  Declaring this a proper class action, certifying named plaintiffs as representatives and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4.  Awarding monetary damages and interest, including treble and punitive damages, pursuant

to the common law and consumer protection law claims, and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   August 24, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:19-cv-04861
United States District Court
Eastern District of New York

Jami Weber-Lugo, Jane Doe individually and on behalf of all others similarly situated

Plaintiff

- against -

Aldi Inc.

Defendant

## Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  August 24, 2019

/s/ Spencer Sheehan
Spencer Sheehan